BERLIN, Appellant v. BERENS et al., Respondents

(80 N.W.2d 79)

(File No. 9588. Opinion filed December 31, 1956)
Rehearing denied February 8, 1957

**T. R. Johnson,** Sioux Falls, for Plaintiff and Appellant.

**Morgan & Fuller,** Mitchell, for Defendants and Respondents.

RENTTO, J.   This is another case under our guest statute—SDC 44.0362.   The car in which plaintiff was riding

as a guest was owned by the defendant Clyde Turner. It was being driven by the defendant Peter Berens when involved in an accident which caused serious personal injuries to the plaintiff. This action seeks recovery for those injuries. At the close of plaintiff's case the court, on motion of the defendants, dismissed the complaint as to the defendant Turner and directed the jury to return a verdict in favor of the defendant Berens. The trial judge was of the view that the plaintiff as a matter of law failed to show that Berens was guilty of willful and wanton misconduct. After denial of plaintiff's motion for a new trial judgment was entered on the verdict. Plaintiff appeals from the judgment and from the order denying a new trial.

Plaintiff does not urge that the court erred in dismissing the complaint as to Turner, the owner of the car. Her main claim on this appeal is that the court erred in directing a verdict for Berens, the driver of the car. She contends that whether Berens was guilty of willful and wanton misconduct is a question of fact which should have been submitted to the jury.

Plaintiff and the defendant Berens and Mrs. Berens are residents of Woonsocket. The defendant, Clyde Turner and his companion Homer Dick, residents of Illinois, were pheasant hunting in the Woonsocket vicinity during the 1952 season. On the night of October 20th these five persons went from Woonsocket to a dance at Ruskin Park. They rode in Turner's Pontiac with Turner doing the driving. From the dance they went to the Brig—an eating establishment north of Mitchell. Defendant Berens drove the car. About 2:30 on the morning of October 21st they left the Brig and started for Woonsocket with defendant Berens again driving. Dick and Mrs. Berens rode in the back seat. Plaintiff was seated to the right in the front seat with Turner seated between her and the driver. They proceeded north on highway No. 37 until involved in a collision with a petroleum transport truck at about 3:00 a. m., just as they passed from Davison County into Sanborn County. The transport was proceeding toward Mitchell.

To the north line of Davison County Highway No. 37 has a concrete surface. In Sanborn County it has a black top

surface. In going north at the point where the concrete ends the highway curves to the west and then runs northwesterly for a short distance where it curves to the north. It is described in the testimony as a "kind of an S curve". The highway was dry and visibility was normal. Earle Dwelle, the driver of the transport, testified that he was going south with his empty transport on his side of the highway at a speed of 40 to 45 miles an hour. As he came into the westerly curve from the north he saw the lights of a car coming from the south. It was about a quarter of a mile away at the place where the concrete highway ends and the oil begins. He continued around the curve on his side and all at once noticed that the car from the south was in the wrong lane of travel about 150 to 200 feet away, traveling toward him at a speed "approaching approximately 60 miles an hour". Its lights were on low beam He hesitated a moment to see what the car was going to do. When he saw that the car wasn't going to get onto its side of the road he gave the steering wheel of his truck a quick turn to his left. He did not apply his brakes.

The right front of the car struck right front wheel of the tandem wheels located near the rear of the trailer. The impact occurred in the lane of travel southwest of the center line. The tractor and much of the trailer were then in the lane of travel northeast of the center line. The trailer became separated from the tractor and came to a stop in the northeast ditch about 75 feet from the point of impact. The tractor continued down the road to the north shoulder near the east curve. The Pontiac car came to a stop on the southwest shoulder of the road facing east on the westerly curve. Apparently none of the vehicles overturned. The Pontiac made a set of parallel skid marks on the highway 63 feet long ending at the point of impact. These were in the right hand lane of traffic proceeding south —that is, in the lane to the south of the center line.

Of the five persons in the Pontiac only the plaintiff and the two defendants were called to testify. So far as here material the testimony of defendant Turner was to the effect that after leaving the Brig they were going at a speed of 45 to 50 miles per hour. He fell asleep when they were

about four or five miles out and continued to sleep until the collision occurred. Plaintiff testified that after leaving the Brig she talked with some of the other passengers for a short while and then fell asleep. During the time that she was awake the defendant Berens was driving properly and talked sensibly. She continued to sleep until the accident took place.

Defendant Berens gave this version of the accident. He first saw the transport being driven by Dwelle as it was coming out of the north curve about 200 to 300 feet away. He put his lights on low beam. The transport was then riding the white line in the center of the highway with the left front wheels of the tractor about a foot over the line. The trailer was cutting diagonally across the road. He crossed over to the left lane in trying to miss the truck. Before this he was traveling on his own side of the road at a speed of from 40 to 50 miles an hour. On cross-examination he admitted that he was arrested and plead guilty to reckless driving and speeding. The allegations of this criminal charge were not offered in evidence.

Plaintiff introduced Exhibit 12, being a copy of a written statement made by Berens about four months after the occurrence concerning the facts surrounding the happening of the accident. This statement differs in some of its details from the testimony he gave as a witness. It also contains an additional statement that three days after the accident he told the motor patrolman that he had dozed off just before the accident. In Exhibit 12 he repudiates this fact. The exhibit was offered in evidence "for the purpose of impeachment". In admitting the exhibit in evidence the court did not indicate that it was admitted for any purpose other than that for which it was offered.

The evidence also shows that about seven miles north of Mitchell the Pontiac overtook a petroleum transport that was going north. The driver of this transport testified that the Pontiac in overtaking him traveled at a speed of 50 to 60 miles an hour. That without giving any signal it overtook him and crossed over on the highway to the east side so far that both right wheels of the Pontiac were off the concrete. In getting back on to the concrete it swerved

a couple of times and then straigtened out and proceeded north on the pavement. He did not see the Pontiac again until he arrived at the scene of the accident about two miles further north. Another car overtook him shortly after the Pontiac had gone by.

Under the circumstances we are required to review this evidence in the light most favorable to the plaintiff. However, since Exhibit 12 was offered and admitted only for the purpose of impeachment its contents may not be considered as substantive evidence even though it might have been admissible in that aspect also. Evidence that is offered for a limited purpose may not be considered for any other purpose. William Deering & Co. v. Mortell, 21 S.D. 159, 110 N.W. 86, 16 L.R.A.,N.S., 352. This limitation applies to evidence that is offered and admitted solely for the purpose of impeachment. 88 C.J.S., Trial, § 89.

Our guest statute relieves the driver or owner of a motor vehicle from liability to a guest for injury, death or loss arising from ordinary negligence and makes him liable only for damages occasioned by his willful and wanton misconduct. The phrase "willful and wanton misconduct" as used in this statute was first before this court for construction in Melby v. Anderson, 64 S.D. 249, 266 N.W. 135. It was most recently before us in Chernotik v. Schrank, 76 S.D. 374, 79 N.W.2d 4. At numerous times between these decisions this court has had occasion to apply this statute under varying fact situations. It has consistently approved and applied the rule announced in the Melby case. The gist of that construction is that it is "conduct which partakes to some appreciable extent, though not entirely, of the nature of a deliberate and intentional wrong". [64 S.D. 249, 266 N.W. 137.]

It is well established by the decisions of this court that willful and wanton misconduct describes conduct which is more than negligence and differs from it in kind and characteristics. Various expressions have been used to describe the difference. The substance of these is, as stated in the Chernotik case, that an affirmative reckless state of mind or deliberate recklessness is the element that differentiates between them. That case emphasizes this by

saying that willful and wanton misconduct "is more akin to an intentional tort than to negligence". [76 S.D. 379, 79 N.W.2d 7.] The plaintiff has the burden of establishing the existence of this element as an indispensable part of her case.

This court has reviewed many cases in which the decisive question was whether the evidence was sufficient to support a finding of willful and wanton misconduct. The requisite evidentiary basis was found to exist in only three of these. Martins v. Kueter, 65 S.D. 384, 274 N.W. 497; Stoll v Wagaman, 73 S.D. 186, 40 N.W.2d 393; Allen v. McLain, 74 S.D. 646, 58 N.W.2d 232, 235. A study of these cases reveals that in each of them the finding was based on the state of mind of the defendant as spelled out from a course of conduct. In Allen v. McLain, supra, we find this statement, "it is not simply the failure to negotiate one turn or the single item of speed but the whole attitude of the defendant and all of the circumstances and conditions confronting him at the time of and prior to the accident which make reasonable a finding of" an affirmatively reckless state of mind.

To establish this element in her case plaintiff relies on the conduct of the defendant Berens in passing the oil transport about seven miles north of Mitchell and on his conduct at the time of and just prior to the accident. She argues that when these two incidents are viewed against the background of the admission made by the defendant in his plea of guilty to a charge of reckless driving arising out of the same accident she was entitled to have her case submitted to the jury. It is our opinion after painstakingly reviewing the evidence that it was not sufficient to justify submitting this case to the jury.

The oil transport that was overtaken was proceeding at a speed of 45 miles an hour on a straight stretch of highway. In passing it Berens traveled at a speed estimated to be between 50 and 60 miles an hour. Such conduct under these circumstances is common driving .procedure. In overtaking the transport and getting into his right hand lane of travel the two right wheels of the Pontiac went off the concrete and onto the shoulder of the road. This occurs rather often and the difficulty encountered in getting

back onto the concrete is not unusual. Fritz v. Wohler, Iowa, 78 N.W.2d 27. The most that can be said of this conduct is that it might be in the realm of negligence.

At the time of and just prior to the accident the Pontiac was traveling on the wrong side of the road. It was proceeding at a speed approaching possibly 60 miles an hour in the face of oncoming traffic. What caused it to be on that side is a matter of conjecture. For 63 feet before the collision the driver of the car applied his brakes in an apparent attempt to avoid the collision. It was then too late. That this constitutes negligence is not questioned, but standing alone it does not constitute willful and wanton misconduct within the meaning of our guest statute. Sorenson v. Wegert, 301 Mich. 497, 3 N.W.2d 857. To hold that it did, would obliterate the difference between conduct that is negligent and misconduct which is willful and wanton.

■ As above stated the defendant Berens on cross-examination admitted that he had plead guilty to a criminal charge of reckless driving and speeding arising out of the accident involved in this action. Where a plea of guilty is admitted as substantive evidence in civil litigation involving the same occurrence. it is not conclusive and may be explained. Clark v. Josephson, N.D., 66 N.W.2d 539. It is received as an admission against interest. The theory behind this being that it is an admission of the acts charged against him. Remmenga v. Selk, 150 Neb. 401, 34 N.W. 2d 757. Our statute defining the offense of reckless driving in effect at the time here material was SDC 44.9921. That section stated the offense in the alternative. It could be committed by the careless and heedless driving of a vehicle in willful and wanton disregard of the rights or safety of others, or by the driving of a vehicle without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property. State v. Rossman, 64 S.D. 532, 268 N.W. 702.

The probative import of an admission in a plea of guilty to the commission of an offense under this statute is conjectural until the allegations of the charge to which the plea was entered are established. It seems to us that since these are not shown the bare admission that he plead

guilty has no probative force as substantive evidence. Consequently we do not reach the question of the admissibility, as substantive evidence, of an admission of the offense under either alternative. It must be borne in mind that this action is not predicated on negligence but on misconduct that is willful and wanton.

We think that the substantive evidence as a whole, when viewed in the light most favorable to the plaintiff, would not have warranted a verdict in favor of the plaintiff. Berens' conduct, while negligent, was not willful and wanton within the meaning of our guest statute. There is no evidence of an affirmatively reckless state of mind or of deliberate recklessness. Accordingly we must hold that the trial court did not err in directing a verdict.

■■ Plaintiff offered to prove Berens had been involved in a motor vehicle accident on May 25, 1946. The offer disclosed that in that accident he was driving a motor vehicle accompanied by his wife and drove it into the rear of another car causing personal injuries to her. Plaintiff argues that the court erred in refusing this offer. In Allen v. McLain, 75 S.D. 520, 69 N.W.2d 390, 397, evidence of previous accidents of the defendant was admitted as proof that the defendant " 'consciously realized' that his conduct would in all probability * * * produce the precise result which it did produce and would bring harm to the plaintiff' ". That case also points out that it is for the judge to decide " 'each time whether the other instance or instances form a basis for sound inference as to the guilty knowledge of the accused in the transaction under inquiry;' ". The admissibility of such evidence is committed to the discretion of the trial court with the admonition that it should be admitted very cautiously. In this instance there was no abuse of the court's discretion. The other matters argued by appellant have been carefully considered. We feel that they are not meritorious.

The judgment and order are affirmed.

All the Judges concur.