Burton **DARTT**, Plaintiff and Appellee,

v.

Henry **BERGHORST**, and Midwest Transport, Inc., Defendants and Appellants.

No. 17526.

Supreme Court of South Dakota.

Considered on Briefs Jan. 15, 1992.

Decided April 29, 1992.

Jon J. LaFleur, LaFleur, LaFleur & La-Fleur, Rapid City, for plaintiff and appellee.

Donald A. Porter, Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for defendants and appellants.

WUEST, Justice.

Dartt brought a negligence cause of action against defendants Midwest Transport, Inc. (Midwest) and Berghorst. The jury found for defendants who now appeal from the circuit court's order granting Dartt a new trial. By notice of review, Dartt appeals the circuit court's order denying his motion for judgment notwithstanding the verdict (J.N.O.V.). We affirm.

On February 26, 1987, Dartt, a state employee, was assigned to operate a snow plow on the left hand shoulder of Interstate 90 East, commencing at Wall, South Dakota. An additional snow plow was assigned to work the right hand shoulder on the same stretch of road. This plow followed Dartt approximately one quarter of a mile behind. Both snow plows were traveling at approximately twenty to thirty miles per hour (m.p.h.). The snow that Dartt plowed was blowing across Interstate 90 making visibility behind him poor.

Berghorst was a truck driver for Midwest, a trucking company based in Wilmar, Minnesota. Berghorst's truck was loaded and weighed approximately 80,000 pounds. As Berghorst left Rapid City, South Dakota heading east on Interstate 90, he was traveling in tandem with another trucker, who was approximately one mile ahead of him. As the first trucker approached the snow plows, he radioed Berghorst on his citizen's band (CB) radio. He advised Berghorst the two snow plows were there, and it was difficult to see Dartt's snow plow because of the snow being kicked up by the plow, although he had passed the plows without incident.

As Berghorst approached the first snow plow, he could see Dartt's snow plow was kicking up snow ahead making it difficult to see down the interstate to the east. Berghorst did not wait to see if the visibility would improve or if the snow plow would pull off the interstate to allow traffic to pass before proceeding into the cloud of snow. Nor did Berghorst sound his horn to notify Dartt he intended to pass. Berghorst entered the snow cloud, and, although his visibility was totally obscured, he continued on at approximately forty-five to fifty m.p.h. without applying the brakes for at least thirty seconds keeping his hands "tight on the wheel." Berghorst came across from the driving lane onto the left hand shoulder and his semi tractor trailer collided with the rear of Dartt's vehicle. Dartt was injured as a result of the collision.

Berghorst was cited by the State Highway Patrol for violating SDCL 32–26–6 (1989) which provides:

> On a roadway divided into lanes, a vehicle shall be driven as nearly as practicable entirely within a single lane and may not be moved from such lane until the driver has first ascertained that such movement can be made with safety....

Berghorst pled guilty by power of attorney.

Dartt brought a negligence lawsuit against Berghorst and Midwest. At the close of the Berghorst's case at trial, Dartt moved for a directed verdict, which motion

was denied. The trial court gave an instruction on legal excuse for violation of safety statutes, and instructed the jury Berghorst was negligent as a matter of law based on his violation of certain safety statutes unless the violation was excused. (These instructions are discussed in greater detail in part I of the opinion). Dartt objected to the instruction on legal excuse and offered an instruction declaring Berghorst negligent as a matter of law. Dartt also offered an instruction specifying the burden of proving legal excuse was on Berghorst and Midwest. The instructions were denied. After a jury verdict in favor of Berghorst and Midwest, Dartt made a timely Motion for Judgment Notwithstanding the Verdict (J.N.O.V.) with Motion for a New Trial in the Alternative. The trial court granted a new trial to Dartt based upon insufficiency of evidence to justify the verdict and upon the trial court's failure to instruct the jury that Berghorst and Midwest had the burden of proving any legal excuse for the safety statute violations. The trial court denied Dartt's Motion for J.N.O.V.

Berghorst appeals raising two issues which we have consolidated into one.

  I. Whether the trial court erred in granting a new trial on the grounds of (1) insufficiency of the evidence and (2) because it failed to instruct the jury that Berghorst had the burden of establishing a legal excuse for violating safety statutes.

Dartt filed a notice of review raising two additional issues.[1] The second notice of review issue is disposed of by our decision on:

**1.** Dartt argues the legal excuse instruction was not warranted by the evidence, and therefore, the trial court should have granted his motion for J.N.O.V. In the alternative, he argues the trial court was correct in granting a new trial because giving the legal excuse instruction without identifying who had the burden of proving excuse was prejudicial and constituted reversible error.

**2.** SDCL 15–6–59(a) provides in pertinent part:
  A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes:
    . . . .

  II. Whether the trial court erred in denying Dartt's Motion for Judgment Notwithstanding the Verdict.

## I.

The trial court granted Dartt a new trial pursuant to SDCL 15–6–59(a) (1984).[2] In its Amended Order Granting a New Trial, the court set forth its reasons for granting the new trial:

  1. The evidence as to the issue of liability was insufficient to justify the verdict.

  2. An error of law occurred at the trial based upon the failure to instruct the jury that the burden of proof was on the Defendant [Berghorst] to prove by a preponderance of evidence that the Defendant's statutory violations were legally excusable, and further based on the court's belief and concern that the jury was further prejudiced since the instructions on legal excuse for statutory violations immediately preceded the instructions on burden of proof.

### A. Insufficiency of Evidence:

Berghorst initially attacks the insufficiency of evidence basis of the Order arguing neither the Order nor Dartt's Motion for New Trial adequately specified where the evidence was insufficient. Because we conclude the trial court properly granted Dartt a new trial based upon its failure to instruct on the burden of proving legal excuse, we need not decide this issue.

(6) Insufficiency of the evidence to justify the verdict or other decision or that it is against law;
(7) Error of law occurring at the trial; provided, that in the case of claim of error, admission, rejection of evidence, or instructions to the jury or failure of the court to make a finding or conclusion upon a material issue which had not been proposed or requested, it must be based upon an objection, offer of proof or a motion to strike.
    . . . .
When the motion is made under subparagraph (6) it shall state the particulars wherein the evidence is claimed to be insufficient.

## B. *Error of Law:*

The trial court also granted Dartt a new trial on the basis that it committed an error of law by failing to instruct the jury the burden of proving a legal excuse for any safety statute violations fell upon Berghorst. The trial court instructed the jury as follows: (1) a vehicle must be driven within a single lane and the driver may not change lanes until he ascertains it is safe to do so; (2) a driver may not drive a vehicle at a speed greater than is reasonable and prudent under conditions then existing; (3) a driver may not fail to yield the right of way to persons engaged in maintenance when notified of the presence of the maintenance persons; (4) and maintenance personnel have the "preference of right of way" and are permitted to drive on the left-hand side of the traveled portion of the highway. The instruction went on as follows:

> These statutes set the standard of care of the ordinarily careful and prudent person. If you find that the Defendant, Henry Berghorst, violated any of these statutes, such violation is negligence unless you find from all the evidence that non compliance was <u>excusable because something made compliance with the statute impossible</u>; something occurred over which the driver had no control; an emergency, not of the driver's own making, prevented compliance; or an excuse is specifically provided by statute.

(Underscoring supplied).

■ We first set out our standard of review. "Whether a new trial should be granted is left to the sound judicial discretion of the trial court, and this court will not disturb the trial court's decision absent a clear showing of abuse of discretion." *Kusser v. Feller*, 453 N.W.2d 619, 621 (S.D. 1990). *Accord Simmons v. City of Sioux Falls*, 374 N.W.2d 631 (S.D.1985). "If the trial court finds an injustice has been done by the jury's verdict, the remedy lies in granting a new trial." *Id.* at 632. "[W]e determine that an abuse of discretion occurred only if no 'judicial mind, in view of

the law and the circumstances of the particular case, could reasonably have reached such a conclusion.'" *Jensen v. Weyrens*, 474 N.W.2d 261, 263 (S.D.1991) (quoting *Estate of Pejsa*, 459 N.W.2d 243, 245 (S.D. 1990); *Estate of Smith*, 401 N.W.2d 736 (S.D.1987)). Finally, we note a decision to grant a new trial stands on firmer footing than a decision to deny a new trial. *Simmons*, 374 N.W.2d at 632.

■ It is settled law that a defendant has the burden of proving legal excuse. *Stevens v. Wood Sawmill, Inc.*, 426 N.W.2d 13, 16 (S.D.1988); *Meyer v. Johnson*, 254 N.W.2d 107, 111 (S.D.1977). Berghorst does not dispute this. He argues instead, the jury instructions as a whole were sufficient to "give a full and correct statement of the applicable law," relying on *Jahnig v. Coisman*, 283 N.W.2d 557, 560 (S.D.1979). *See also Frazier v. Norton*, 334 N.W.2d 865, 870 (S.D.1983); *Dwyer v. Christensen*, 77 S.D. 381, 92 N.W.2d 199 (1958). We disagree. *Jahnig* also states "refusal to give a requested instruction setting forth applicable law is not only error, but prejudicial error." *Jahnig*, 283 N.W.2d at 560. *Accord Schelske v. South Dakota Poultry Co-op., Inc.*, 465 N.W.2d 187, 190 (S.D.1991); *Rosenberg v. Mosher*, 331 N.W.2d 79, 80 (S.D.1983). Indeed, *Jahnig* held failure to give, in a products liability action, a jury instruction on strict liability constituted prejudicial error because the jury may have concluded that the "plaintiff carried a burden of proof of which she was relieved under the strict liability doctrine." *Jahnig*, 283 N.W.2d at 561.

■ Here, the trial court disallowed the defenses of contributory negligence and assumption of the risk. It was established that Berghorst violated SDCL 32–26–6 (driving within lane required) and SDCL 32–27–10 (1989) (failing to yield to highway maintenance equipment). Berghorst does not contend otherwise. Indeed, Berghorst was ticketed for violating SDCL 32–26–6 and pled guilty.[3] Thus, the

---

**3.** Pleading guilty to such a violation does not conclusively establish the violation, but constitutes an admission against interest. *Weber v. Bernard*, 349 N.W.2d 51, 54 n. 3 (S.D.1984);

jury must have concluded Berghorst's violation was legally excused. However, no instruction given to the jury informed it that Berghorst had the burden of proving his statutory violations were excused.

We cannot say these instructions taken as a whole "give a full and correct statement of the applicable law." *Jahnig*, 283 N.W.2d at 560; *Frazier*, 334 N.W.2d at 870. More importantly, we believe a "judicial mind, in view of the law and the circumstances of the particular case," could have reasonably reached the conclusion that the jury instructions as a whole did not give a full and correct statement of the applicable law. *See Weyrens*, 474 N.W.2d at 263. Thus, we conclude the trial court did not abuse its discretion in granting Dartt a new trial based upon its failure to instruct the jury regarding Berghorst's burden of proving legal excuse.[4]

## II.

By notice of review, Dartt argues the trial court erred in denying his Motion for J.N.O.V. The gist of Dartt's argument is that Berghorst was negligent as a matter of law because he violated applicable safety statutes, primarily the statute requiring a driver to drive within a single lane and not to change lanes until he or she has ascertained that it is safe to do so, SDCL 32–26–6, and the statute requiring a driver to yield the right-of-way to maintenance personnel where the driver is warned of the worker's presence, SDCL 32–27–10. Secondly, Dartt argues reasonable minds could not find that Berghorst's noncompliance

with the above statutes was legally excused.[5]

> When faced with such a motion, the evidence before the trial court is to be viewed in a light most favorable to the party against whom the motion is made, and the evidence supporting the position of the nonmoving party must be accepted as being true. Further, the court must indulge all legitimate inferences that the evidence might suggest in favor of the party against whom the motion is brought.

*Kreager v. Blomstrom Oil Co.*, 379 N.W.2d 307, 310 (S.D.1985). *Accord Herren v. Gantvoort*, 454 N.W.2d 539, 540–41 (S.D.1990). "[I]f there is sufficient evidence to allow reasonable minds to differ, the denial of the motion [for J.N.O.V.] was correct and appropriate." *Haggar v. Olfert*, 387 N.W.2d 45, 49 (S.D.1986); *Herren*, 454 N.W.2d at 541. As discussed in Part I, Berghorst's statutory violations were clearly established and are not in dispute. Violation of a safety statute is negligence as a matter of law unless it is legally excused. *Stevens*, 426 N.W.2d at 15; *Meyer*, 254 N.W.2d at 111; *Zakrzewski v. Hyronimus*, 81 S.D. 428, 432, 136 N.W.2d 572, 574 (1965); *Albers v. Ottenbacher*, 79 S.D. 637, 641–42, 116 N.W.2d 529, 531 (1962); *Vaughn v. Payne*, 75 S.D. 292, 63 N.W.2d 798 (1954). Thus, we must determine whether sufficient evidence exists in the record which, when viewed in the light most favorable to Berghorst, would justify

---

*Berlin v. Berens*, 76 S.D. 429, 80 N.W.2d 79 (1956).

4. Berghorst relies on *Yount v. Seager*, 181 Neb. 665, 150 N.W.2d 245 (1967) for the proposition that an instruction on the burden of proof need not be given "where the burden has been tacitly assumed by the right party." *Id.* 150 N.W.2d at 249 (citing 88 C.J.S. Trial § 308 (1955)). In that case, the burden was on the plaintiff. The court specifically noted the defendant had admitted liability and the only question for the jury was damages. Further, "the only evidence presented to the jury was done so by the plaintiff." *Id.* The *Yount* case was factually distinguishable from the case before us. Here, evidence regarding liability was presented by both sides. In addition, the *Yount* case involved a question of

law which is reviewed by an appellate court de novo. We are dealing with a decision to grant a new trial, which we review for an abuse of discretion. *Kusser*, 453 N.W.2d at 621; *Simmons*, 374 N.W.2d at 632. That distinction is material here.

5. Closely related is Dartt's argument that the trial court erred in instructing the jury on the legal excuse doctrine. Since "[a] trial court is to present only those instructions which are supported by competent evidence in the record[,]" *Schelske*, 465 N.W.2d at 190; *Kallis v. Beers*, 375 N.W.2d 642, 644 (S.D.1985); *Wheeldon v. Madison*, 374 N.W.2d 367, 372 (S.D.1985), our decision regarding the J.N.O.V. necessarily disposes of this issue.

a reasonable mind in concluding Berghorst's statutory violation was excused.

■ There are four circumstances in which the violation of a safety statute may be excused:

(1) Anything that would make compliance with the statute impossible;

(2) Anything over which the driver has no control which places his car in a position violative of the statute;

(3) An emergency not of the driver's own making by reason of which he fails to observe the statute; and

(4) An excuse specifically provided by statute.

*Engel v. Stock,* 88 S.D. 579, 581–82, 225 N.W.2d 872, 873 (1975); *Albers,* 116 N.W.2d at 531.

■ "A legal excuse ... must be something that would make it impossible to comply with the statute." *Albers,* 116 N.W.2d at 532. Noncompliance must be caused by circumstances beyond the driver's control and not produced by his own misconduct. Evidence of due care does not furnish an excuse or justification. *Id.* "If the 'legal excuse' is an emergency, then the party must prove (1) that an emergency existed, (2) that he was not engaged in prior conduct which caused or contributed to the emergency, and (3) that he was unable to comply with the statute because of the emergency." *Meyer,* 254 N.W.2d at 111.

Thus, where a driver encounters a sudden patch of ice on a roadway, loses control and crosses the center line, his breach of the statute may be legally excused. It becomes a question for the jury whether the icy condition was foreseeable. *Bannon v. Pfiffner,* 333 N.W.2d 464, 470 (Iowa 1983). *See also, Weber,* 349 N.W.2d at 53–54 (where testimony showed the defendant was faced with sudden and unexpected slippery road conditions, the question of legal excuse was properly submitted to the jury). Where, however, the road conditions are generally icy, the driver is deemed to be aware of the poor road conditions. If he fails to drive accordingly and then loses control on ice, breaching the statute, he cannot set up the icy condition as an emergency. *Bannon,* 333 N.W.2d at 469–70.

While this case does not involve an unavoidable accident instruction, our cases which have discussed the propriety of such instructions are helpful in analyzing the issue before us. We have held an unavoidable accident instruction is not appropriate where an occurrence is reasonably foreseeable. *Howard v. Sanborn,* 483 N.W.2d 796, 798 (S.D.1992); *Stevens,* 426 N.W.2d at 17; *Plucker v. Kappler,* 311 N.W.2d 924 (S.D.1981); *Cordell v. Scott,* 79 S.D. 316, 323, 111 N.W.2d 594, 598 (1961). Thus, in *Plucker,* we held the trial court committed error in giving an unavoidable accident jury instruction where the defendant acknowledged she had observed icy patches on the highway. We stated there was no evidentiary foundation in the record to show the necessary element of surprise distinguishing the situation from one where the presence of ice was sudden and unexpected or where a tire blew out or some other mechanical failure occurred. *Plucker,* 311 N.W.2d at 925 (citing *Meyer, supra* ). Likewise, in *Stevens,* we held it was improper to instruct the jury on unavoidable accident because it was "totally predictable" that, if a truck's brakes were not in proper working order, it would roll downhill (striking another vehicle). *Stevens,* 426 N.W.2d at 17. Finally, in a very recent decision, we held no "surprise factor" was present despite the presence of blinding headlights from an oncoming vehicle where the defendant knew the highway was busy, that the plaintiff's vehicle was ahead and that motorists often stopped at the accident location to execute left hand turns. *Howard,* at 799.

Berghorst testified at trial:

QUESTION BY MR. PORTER (Berghorst's attorney):

QUESTION: Now, was there snow—was the cloud ahead of you constant or changing? What kind of cloud was it?

ANSWER: Well, when I come up on him, I don't think it was much finger drifts. It was quite a bit of snow on the shoulder. There wasn't much of a break. I was waiting for that too, and it was just

snow all the time. There wasn't much of a chance to get by.

....

QUESTION BY MR. PORTER:
QUESTION: Okay. *Was the cloud always a full cloud in front of you?*
ANSWER: *Pretty much, ya.*

....

QUESTIONS BY MR. LaFLEUR (Dartt's attorney on cross examination):
QUESTION: And as you got to the first snowplow, it was clear that Mr. Dartt's snowplow was kicking snow over across the road?
ANSWER: Yes.

....

QUESTION: So that you were—when you approached the back of Mr. Dartt's snowplow, *you were not surprised to find that that snow that this was blowing across the road was obstructing your visibility; isn't that correct?*
ANSWER: *Yes.*
QUESTION BY MR. LaFLEUR TO DEFENDANT BERGHORST:
QUESTION: When you attempted to pass the second snow plow, Mr. Berghorst, you came across the passing lane and onto the left-hand shoulder of eastbound I–90 and ran into the rear end of the second snow plow; isn't that correct?
ANSWER: I was driving in the right lane until I got into the blackout or whiteout, whatever you want to call it, that I couldn't see nothing, just like a sheet over the windshield, and I held the steering wheel with both hands, had everything going my way, the next thing the back of the snowplow ... I didn't hit no brakes. I didn't do nothing. I just steered right straight from—the truck was setting like I parked it there [in the median], like I meant it to be there.

....

QUESTION BY MR. PORTER TO DEFENDANT BERGHORST:

QUESTION: Mr Berghorst, is there anything that you think you could have done to avoid this accident other than what you did?
ANSWER: Hindsight is always better. I shouldn't have passed him is what I shouldn't have done. That's where I was in the wrong....

....

QUESTION BY MR. PORTER:
What is it that you say you shouldn't have done?
ANSWER: Well, I shouldn't have hit the plow. I shouldn't have been in that kind of condition. I should have stayed behind him.
(Emphasis added).

We acknowledge the rule that the existence of an excuse is to be "determined by looking toward the event rather than back at it." *Hullander v. McIntyre*, 78 S.D. 453, 459, 104 N.W.2d 40, 43 (1960), *overruled on other grounds, Albers*, 116 N.W.2d at 532. Looking toward the event, and viewing the evidence in a light most favorable to the non-moving party (Berghorst), we conclude there is insufficient evidence in the record which could justify a jury finding that Berghorst was faced with a sudden emergency *not of his own making*. Berghorst saw the snowcloud which he acknowledged was "pretty much full." Nonetheless, rather than waiting to see whether visibility would improve, Berghorst drove into the snowcloud. He acknowledged that he was not surprised when his vision was obstructed. It is settled law a party can claim no better version of the facts than he has given in his own testimony. *Trammell v. Prairie States Ins. Co.*, 473 N.W.2d 460, 463 (S.D.1991); *Waddell v. Dewey Cty. Bank*, 471 N.W.2d 591, 595 n. 3 (S.D.1991); *Heer v. State*, 432 N.W.2d 559, 567 (S.D.1988); *Drier v. Perfection, Inc.*, 259 N.W.2d 496, 508 (S.D. 1977). It was certainly foreseeable that once Berghorst entered the snowcloud, he would be blinded. *See Bannon*, 333 N.W.2d at 470; *Plucker*, 311 N.W.2d at 925; *Cordell*, 111 N.W.2d at 598. The fact that other vehicles made it through the

snowcloud does not help Berghorst. *"Evidence of due care does not establish an excuse or justification."* *Stevens*, 426 N.W.2d at 15 (emphasis original). *Accord Albers*, 116 N.W.2d at 532. Since there was not sufficient evidence to support a jury finding that Berghorst was faced with a sudden emergency, the matter should not have been submitted to the jury. Thus, the trial court erred in refusing to grant J.N.O.V. in favor of Dartt.[6] *See Stevens*, 426 N.W.2d at 16.

We affirm the circuit court to the extent it granted Dartt a new trial. We reverse to the extent it failed to grant Dartt's Motion for J.N.O.V. We direct the trial court to enter judgment for Dartt on the issue of liability and to conduct a trial only on the issue of damages.

MILLER, C.J., and HENDERSON, J., concur.

SABERS and AMUNDSON, JJ., concur in part and dissent in part.

SABERS, Justice (concurring in part and dissenting in part).

I agree that we should affirm the trial court on granting Dartt a new trial for the reason that Berghorst had the burden of proving legal excuse for violation of any safety statute. We should *also* affirm, rather than reverse, the trial court's denial of Dartt's motion for judgment notwithstanding the verdict (J.N.O.V.).

It seems to me that the majority is violating the very rules that it espouses, i.e.:
(1) "Looking toward the event rather than [hindsight] ...",
(2) "Viewing the evidence in a light most favorable to the non-moving party (Berghorst) ..." and,
(3) "[I]f there is sufficient evidence to allow reasonable minds to differ, the de-

nial of the motion [for J.N.O.V.] was correct and appropriate. *Haggar v. Olfert*, 387 N.W.2d 45, 49 (S.D.1986); *Herren*, 454 N.W.2d at 541."

Here, any statutory violations occurred after Berghorst drove into the whiteout of the snow cloud. Since the burden of proving legal excuse is now properly upon Berghorst, whether he meets this burden is for the jury. Reasonable minds can differ as to whether Berghorst could proceed *as did the other traffic* or wait indefinitely behind the snowplow. *See Herren*, 454 N.W.2d at 541; *Haggar*, 387 N.W.2d at 49. Directing a verdict from · .r appellate perch denies a jury trial on the real issue in this case and unduly tinkers with the evidence as viewed by the trial court. We should *not* direct a verdict on liability. We should let all of the trial court's rulings stand.

AMUNDSON, J., joins this special writing.

---

**6.** Nor do we believe compliance with the statute was impossible. A party's noncompliance with a safety statute will not be excused because compliance was impossible, "if some other course of conduct producing conformity is reasonably open to the actor." 57A Am.Jur.2d Negligence § 762 (1989). *See also Andrew v. White Line Bus Corp.,* 115 Conn. 464, 161 A. 792, 793–94 (1932). Berghorst could simply have stayed

behind the snowplow. Finally, for the same reason, we do not believe this was a situation where the violation was caused by some independent force over which the violator had no control. *See* 57A Am.Jur.2d § 763; *Giancarlo v. Karabanowski,* 124 Conn. 223, 198 A. 752, 753–54 (1938) (driver's violation excused where prior collision not the driver's fault caused driver to cross centerline).