# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3160

_____

David Gaillard,                                     *
                                                    *
           Plaintiff – Appellant,           *
                                                    *
                                                    *   Appeal from the United States
      v.                                *   District Court for the District
                                                    *   of South Dakota.
Jim's Water Service, Inc., a Wyoming                *
corporation; Howard Hoyt, an                        *
individual,                                         *
                                                    *
          Defendants – Appellees.          *

_____

Submitted: May 12, 2008
Filed: August 1, 2008

_____

Before LOKEN, Chief Judge, BYE and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

David Gaillard was struck and injured by a vehicle driven by Howard Hoyt and owned by Jim's Water Service, Inc. (JWS) while he attempted to repair a parked motorcycle on the shoulder of I-90 near Sturgis, South Dakota. He sued Hoyt and JWS (collectively, "Defendants") for negligence, claiming brain injury, chronic pain from leg injury, and loss of income. The first trial resulted in a mistrial because the jury verdict was not unanimous. The second trial resulted in a verdict for Defendants.

On appeal, Gaillard argues the district court[1] erred in instructing the jury on the legal excuse doctrine, contributory negligence and assumption of risk. He also argues the district court erred by denying his motion in limine to exclude evidence of his tax returns because the evidence was irrelevant, unfairly prejudicial and inflamed the jury. We affirm.

## I. Background

Gaillard is a pastry chef from France who became a U.S. citizen and Las Vegas resident in 1988. In 2002, he rode his motorcycle to Sturgis, South Dakota, for the famous rally. On August 19, he and his friend Larry Swain parked on the shoulder of I-90 and attempted to fix Swain's headlight. Gaillard parked his motorcycle at an angle to make it more visible to oncoming traffic; he did not turn on his lights or flashers. A little less than thirty minutes after the 8:08 p.m. sunset, Howard Hoyt – driving a vehicle and trailer owned by JWS – struck and injured Gaillard.

Hoyt, a Wyoming resident who had never driven through Sturgis before, noticed traffic getting heavy as he came into the city. A large orange warning sign, operated by a generator, stood on the side of the highway just prior to where the accident occurred. The sign warned drivers approaching Sturgis to check their speed because of heavy traffic ahead. (Trial Tr. at 167). Hoyt testified he did not see this sign. (Id. at 152).

Other facts regarding the details of the accident are disputed. Gaillard contends he was legally parked in the emergency lane for the purpose of repairing the headlight on his friend's motorcycle. Gaillard argues Hoyt's negligence created the emergency situation that caused him to swerve onto the shoulder because he did not appropriately

---

[1]The Honorable Karen E. Schreier, Chief United States District Judge for the District of South Dakota.

slow down his vehicle when he noticed the traffic ahead. Gaillard cites testimony from Kelly Trenary, who was riding his motorcycle behind Hoyt's truck, that while other cars were slowing down around him, Hoyt did not slow down. Trenary testified, "It appeared to me that he didn't recognize that hazard ahead of him and was not slowing down." (Id. at 169). He further testified he believed Hoyt attempted to enter into the passing lane instead of slowing down, was unable to change lanes because of the traffic, and then tried to stop, losing control and swerving onto the shoulder. (Id. at 171-72). He also testified he saw the motorcycles on the shoulder after he crested the hill, approximately a quarter of a mile away. (Id. at 170).

Defendants argue Hoyt did appropriately slow his vehicle down to 60 mph when signs announced the speed limit was reduced from 75 to 65 mph. Hoyt claims he noticed traffic was backed up but, because no brake lights were visible, he knew the cars were moving. He applied his brakes "a little bit." Suddenly, the traffic ahead stopped and he was faced with an emergency, which Defendants claim was not of his own making. Defendants argue Hoyt could not see Gaillard on the shoulder because it was approximately thirty minutes after sunset and Gaillard's motorcycle did not have its lights on. Rather than crash into the traffic in front of him, Hoyt chose to swerve onto the shoulder. Defendants argue: (1) Hoyt was not negligent; (2) he was legally excused by the emergency; (3) Gaillard assumed the risk by stopping on the shoulder of an interstate highway at dusk; and (4) he was contributorily negligent by failing to turn on his hazard lights or headlights.

Defendants also presented evidence at trial suggesting Gaillard exaggerated his injuries, falsified income tax returns and otherwise fabricated his lost income to inflate his damages. After the accident – and to inflate his lost income claim – he filed supplemental tax returns, which claimed additional income of as much as $120,000 per year for the previous few years derived from an alleged catering business he owned. The evidence at trial showed during the same years he was supposedly earning about $150,000, but declaring only around $30,000 per year, he failed to pay

the IRS a debt of $11,000. The evidence also showed he was fraudulently receiving unemployment compensation for the two years before the accident, claiming to be unemployed while he in fact worked for a pest control business and allegedly made $118,000 a year as a self-employed caterer. Even Gaillard's expert on lost earnings stated he could not rely on Gaillard's tax returns because he could not "trust them" and they might be "pure fiction."

Gaillard produced these supplemental tax returns in the course of discovery, and he used them in the first trial to support his lost income claim. Before the second trial, however, he moved to exclude the tax returns as more prejudicial than probative. The district court found the evidence was prejudicial, but not more so than it was probative. The court found the evidence he attempted to perpetrate fraud on the United States was relevant to his character for truthfulness as a witness under Rule 608(b) and was admissible to impeach his credibility as well as the credibility of his economic expert.

## II. The Jury Instructions

Gaillard argues the district court should not have instructed the jury on contributory negligence, assumption of risk, and the legal excuse doctrine.

## A. The Standard of Review

We review a district court's decision to give particular instructions for abuse of discretion. Burry v. Eustis Plumbing & Heating, Inc., 243 F.3d 432, 434 (8th Cir. 2001). "We consider whether the jury instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury. Because many errors are harmless, we will not reverse the judgment unless the alleged error was prejudicial." Id. (internal citations omitted).

## B. Contributory Negligence

"Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause." Freeman v. Berg, 482 N.W.2d 32, 34 (S.D. 1992) (citation omitted). Under the contributory negligence doctrine, a negligent defendant is not liable if the contributing negligent actions of the plaintiff are more than slight in comparison with the negligence of the defendant. Questions of negligence, contributory negligence and assumption of risk are questions for the jury so long as there is evidence to support the issues. Nelson v. Nelson Cattle Co., 513 N.W.2d 900, 903 (S.D. 1994).

In South Dakota, an unexcused violation of a safety statute constitutes contributory negligence per se if such violation is the proximate cause of the injury to the person for whose protection the statute was enacted. Alley v. Siepman, 214 N.W.2d 7, 9 (S.D. 1974). By statute, a vehicle parked along the side of the highway must display or activate its headlights and taillights during the period from one-half hour after sunset to one-half hour before sunrise and also must use such lighting at any other time when there is not sufficient light to render clearly discernible any person on the highway at a distance of 200 feet ahead. S.D. CODIFIED LAWS §§ 32-17-4, 32-17-27.

Defendants presented evidence showing Gaillard may have violated SDCL 32-17-4 and SDCL 32-17-27 when he did not activate the headlight and taillight of his motorcycle prior to the accident. While the accident occurred just before the thirty minutes before sunset, it was a fact question whether there was sufficient light. Defendants were therefore entitled to a contributory negligence per se instruction.

## C.  Assumption of Risk

To prove assumption of risk, a defendant must show "1) that the plaintiff had actual or constructive knowledge of the existence of the specific risk involved; 2) that the plaintiff appreciated the risk's character; and 3) that the plaintiff voluntarily accepted the risk, having had the time, knowledge, and experience to make an intelligent choice." Carpenter v. City of Belle Fourche, 609 N.W.2d 751, 764 (S.D. 2000) (quoting S.D. Pattern Jury Instruction 13-01).  The difference between assumption of risk and contributory negligence is "between risks which were in fact known to the plaintiff, or so obvious that he must be taken to have known of them, and risks which he merely might have discovered by the exercise of ordinary care." Bartlett v. Gregg, 92 N.W.2d 654, 658 (S.D. 1958).

Defendants presented evidence that Gaillard had actual or constructive knowledge of the dangers associated with parking on the side of the interstate at dusk without his lights on, appreciated the character of the risk, and chose to accept the risk rather than driving up to the nearest exit to repair Swain's headlight.  Defendants were therefore entitled to an assumption of risk instruction.

## D.  The Legal Excuse Doctrine

Under the legal excuse doctrine, a defendant can be exonerated from liability for per se negligence if he proves by a preponderance of evidence he had a legal excuse. Meyer v. Johnson, 254 N.W.2d 107, 111 (S.D. 1977).  One possible excuse is "an emergency not of the driver's own making by reason of which the driver fails to observe the statute." Albers v. Ottenbacher, 116 N.W.2d 529, 531 (S.D. 1962). "If the legal excuse is an emergency, then the party must prove (1) that an emergency existed, (2) that he was not engaged in prior conduct which caused or contributed to the emergency, and (3) that he was unable to comply with the statute because of the emergency." Meyer, 254 N.W.2d at 111.

"A trial court is to present only those instructions which are supported by competent evidence in the record." Dartt v. Berghorst, 484 N.W.2d 891, 895 n.5 (S.D. 1992). A legal excuse instruction is inappropriate if the record, viewed in the light most favorable to the defendant, contains insufficient evidence to conclude the defendant did not cause or contribute to the emergency. See id. at 895-96. In Dartt, the court explained the foreseeability of the emergency is an important factor in determining whether a defendant should get an instruction for legal excuse due to emergency, and emphasized "[e]vidence of due care does not furnish an excuse or justification." Id. at 896.

At the second trial, the court inserted a legal excuse instruction within its negligence per se instruction, jury instruction number six. Gaillard objected to the inclusion of the elements for legal excuse based on the authority of Dartt. Gaillard argued the legal excuse instruction was inappropriate because, by failing to drive the vehicle at the appropriate rate of speed for traffic conditions, Hoyt was engaged in prior conduct which caused or contributed to the emergency. Defendants argued because the court was instructing the jury that violating a safety statute was negligence per se, it should also instruct them there is an exception to liability for a legal excuse, including emergencies.

The district court maintained it would retain the legal excuse instruction within the negligence instruction, but would not give the sudden emergency instruction Defendants had requested.[2] It relied on Meyer, in which the Supreme Court of

---

[2]The sudden emergency doctrine is an expansion of the reasonably prudent person standard of care. Meyer v. Johnson, 254 N.W.2d at 110.

This instruction should be given only if the evidence is sufficient to support a finding (1) that the party invoking the doctrine was in fact confronted by a sudden and unexpected danger, (2) that the dangerous situation was not brought about by the party's own negligence, (3) that at least two courses of action were available to the party after the

-7-

South Dakota held the legal excuse instruction should have been given instead of the sudden emergency instruction because there was no evidence the defendant chose between two courses of action. See Meyer, 254 N.W.2d at 111. Here, the district court reasoned that in an ordinary negligence action the jury is adequately instructed on the ultimate issues by instructions on negligence, contributory negligence, burden of proof and proximate cause, Trial Tr. at 435-36, and further instruction on sudden emergency was unnecessary and "would improperly emphasize the defendant's position." Id. at 437; see Carpenter, 609 N.W.2d at 764 (refusing to give a sudden emergency instruction because the jury was adequately instructed on the issues and the instruction "would have served only to improperly emphasize the defendants' position."). The court noted:

> There's no evidence here of sudden unexpected presence of ice, a tire blowout, brake malfunction, or other mechanical failure. In their brief the defendants argue that traffic suddenly stopped, but the defendant admitted when he testified, and all the other witnesses that testified, talked about the fact that the traffic was very heavy and backed up, and the defendant admitted during this trial that he'd been warned while in Rapid City the traffic was heavy and he'd been warned about Sturgis. *The defendant's testimony in this trial hasn't shown that he was confronted by a sudden and unexpected danger that was not brought about by his own negligence.* In light of the Court's instructions on contributory negligence and assumption of the risk, I find that to give a further instruction on the sudden emergency doctrine would improperly

> dangerous situation was perceived, and (4) that the choice of the course of action taken after confrontation was a choice which would have been taken by a reasonably prudent person under similar circumstances, even though it may later develop that some other choice would have been better.

Id. at 110-11 (internal citations omitted). Under the sudden emergency doctrine, if a defendant chooses the course of action a reasonably prudent person would have taken under similar circumstances, he or she is not negligent.

emphasize the defendant's position, so I am going to refuse defendant's proposed instructions 9 and 18.

(Id. at 436-37) (emphasis added).

Gaillard contends the district court found there was no evidence Hoyt was confronted by a sudden and unexpected danger not brought about by his own negligence. He argues it was, therefore, improper for the court to instruct the jury as to legal excuse because legal excuse requires the defendant be confronted by an emergency not of his own making. Gaillard misunderstands the import of the district court's comments.

The court refused the sudden emergency instruction because it felt the instruction should not be given along with a contributory negligence instruction and might "improperly emphasize the defendant's position" – *not* because the court had determined Defendants were negligent as a matter of law. While we cannot explain the district court's puzzling choice of words when it ruled on the sudden emergency instruction, it was only a comment – not a legal conclusion regarding Defendants' negligence. As the district court later wrote,

> Evidence was presented at trial that could allow a reasonable jury to find the accident that resulted in injury to Gaillard was not the result of negligence. Hoyt testified that he slowed down when he neared the Sturgis exit, but nonetheless was unable to bring his vehicle to a stop in time to avoid the traffic backed up in front of him. Further, Hoyt testified that traffic was proceeding at a normal rate of speed until just before the accident when it slowed down near the Sturgis exit. This evidence could support a jury finding that Hoyt was not negligent.

08/13/07 Order Denying Motion for New Trial, at 15-16.

Our independent review of the evidence leads us to conclude there was sufficient evidence to support either conclusion, i.e. Hoyt was negligent *or* he was legally excused by virtue of an emergency. Since it was question of fact, it was proper to instruct the jury that per se negligence can be legally excused by an emergency.

## III.  The Tax Returns

Gaillard argues the district court abused its discretion when it admitted evidence of his supplemental tax returns, which he filed after the accident.

### A.  Standard of Review

The district court's decision to allow evidence of Gaillard's tax returns to be admitted and utilized at trial is reviewed for abuse of discretion.  Harris v. Chand, 506 F.3d 1135, 1139 (8th Cir. 2007).  We will not reverse absent a showing that the ruling had a substantial influence on the jury's verdict.  Id.

### B.  Analysis

After the accident, Gaillard filed supplemental tax returns changing his reported income to a higher figure.  Defendants used the returns to impeach the credibility of Gaillard and his expert witness.  Gaillard argues because his expert did not rely on the returns when estimating his future income loss, the returns were not relevant.  He further argues, under Federal Rule of Evidence 403, any probative value was substantially outweighed by the prejudicial effect.  See Fed. R. Evid. 403.  He contends Defendants used the information to improperly incite the jury into punishing him for being a liar and a cheat.

We find Gaillard's tax returns highly relevant to the defense of this case.  First, past income as established by tax returns is highly relevant to a loss of income claim.

-10-

Second, the tax returns were probative of his character for untruthfulness and thus relevant to keeping any damage award to a reasonable and fair level. See Fed R. Evid. 608(b). The returns were offered to attack the credibility of his testimony regarding loss of income and the extent and severity of his injuries. They were also relevant to impeach the credibility of Gaillard's economic expert, who testified he typically relies upon an individual's income tax return as the most reliable source of wage verification, yet ignored Gaillard's untrustworthy returns.

The district court properly found when Gaillard presented evidence to suggest he suffered a loss of income, he opened the door for Defendants to produce evidence to contradict his claims. See Halladay v. Verschoor, 381 F.2d 100, 113 (8th Cir. 1967) (income tax returns may be treated as a prior inconsistent statement and may be used to impeach witness as to amount of loss). It matters not that Gaillard's expert did not rely on the returns. The district court properly found the tax returns were admissible as impeachment evidence under Rule 608(b), which allows the "court in its discretion to allow cross examination of witnesses regarding specific instances of a witness's own conduct if the past experiences are probative of a character of untruthfulness." (5/14/2007 Order Denying Motion To Exclude Tax Returns, at 2 (citing United States v. Beal, 430 F.3d 950, 956 (8th Cir. 2005); Fed. R. Evid. 608(b)).

## IV. Conclusion

For the foregoing reasons, we affirm the district court.

_____