**In re ESTATE OF Louis SMITH.**

**No. 15278.**

Supreme Court of South Dakota.

Argued Jan. 14, 1987.

Decided March 4, 1987.

Raymond Gallagher, Redfield, for appellee, Ann Smith.

David L. Ganje, Aberdeen, for appellants, Randy Smith, Barry Smith, and Karel Hammer.

MORGAN, Justice.

This appeal arises out of the probate proceedings involving the estate of Louis Smith (Louis). Surviving spouse Ann Smith (Ann) petitioned for and was awarded her elective share of the estate. Smith's

natural children (Children) appeal the award of the elective share to Ann. We affirm in part, reverse in part, and remand.

At the time of his death on June 9, 1983, Louis was sixty years old and had been married to Ann for slightly over ten years. At the time of Louis' death Ann was fifty-three years old and was employed full time at the State School in Redfield, South Dakota. On June 28, 1983, Ann was appointed administratrix of the estate and shortly thereafter petitioned for her elective share under SDCL ch. 30–5A. The trial court determined that the value of Louis' estate was $76,261 and that the property chargeable to Ann amounted to $35,585, making a total augmented estate of $111,846. The court further determined that Ann was entitled to a $100,000 share of the augmented estate and that Ann could select property of the estate totalling $64,415 ($100,000 − $35,585).

At the time of the marriage in April of 1973, both parties owned homes. Ann subsequently sold her home and began living with Louis at his home on the farm. Some of the proceeds of Ann's home sale went to buying Louis a fishing boat, with the remainder placed in certificates of deposit in Ann's name. Ann made substantial improvements to Louis' house and also purchased a pickup for Louis' use. Ann also purchased a refrigerator and new television for the house when the existing appliances failed. Ann paid nearly all of the food bills and paid a substantial portion of the other household expenses. During the marriage, Louis paid for some household improvements and would pay for utilities and telephone charges when he was financially able. The record indicates that Louis was sporadically employed during the period of the marriage, perhaps due to some physical maladies. There is also evidence in the record indicating that Louis drank *to excess*.

Louis and Ann had at least two joint checking accounts, although it appears that the couple kept the bulk of their finances separated. At the time of Louis' death, Ann had investments in her own name including two certificates of deposit worth approximately $6,000 total, a vested retirement account with the State of South Dakota, and some interest in three quarter horses. Ann received $14,500 in life insurance proceeds upon Louis' death.

We note briefly that elective share provisions were first enacted when South Dakota adopted the Uniform Probate Code (UPC). 1974 S.D.Sess.Laws Chap. 196. The UPC was not well received and was repealed by the legislature in 1976. In 1980, separate elective share provisions were enacted. 1980 S.D.Sess.Laws Chap. 205 (now codified at SDCL ch. 30–5A).

There are large distinctions between the South Dakota elective share provisions and those of the UPC. The UPC provides for an automatic award to the surviving spouse of one-third of the augmented estate and does not deduct homestead or other allowance exemptions from the elective share. SDCL ch. 30–5A, on the other hand, provides for a *maximum* of one-third, or $100,000, whichever is greater. The trial court may, however, equitably adjust the award at less than the maximum in accord with certain listed conditions. Additionally, the homestead and other allowable exemptions are chargeable against the elective share. There are also other distinctions applicable to testate estates that are not here applicable.

Our final preliminary observation relates to the procedural aspects of the elective share statutes. There are three general steps involved. First, the surviving spouse must give timely notice of her intention to take under the elective share statutes. SDCL 30–5A–6. The court then gives notice of hearing and determines the amount of the elective share and orders its payment subject, however, to the surviving spouse's right to withdraw the petition before entry of a final determination by the court. *Id.*

Children raise eight issues on appeal which are condensed into four issues for purposes of this decision. Initially, Children claim that the trial court abused its discretion by awarding a $100,000 elective

share to Ann. Secondly, Children maintain that the trial court must apply the value of Ann's homestead right first to satisfy, and if sufficient, to eliminate the elective share. Thirdly, Children claim the trial court abused its discretion by not excluding Smith family heirlooms from property that Ann may select under her elective share. Fourthly, Children claim that the intestate succession statute, SDCL 29-1-5, and the elective share statute, SDCL 30-5A-5, conflict and that SDCL 29-1-5 should prevail.

The first issue that we consider is whether the trial court abused its discretion by awarding a full $100,000 as Ann's elective share. SDCL 30-5A-5 provides in pertinent part that where the value of property passing to the surviving spouse is less than one-third of the value of the augmented estate, or $100,000, whichever is greater, the court, upon application of the surviving spouse, shall award to the surviving spouse such elective share in the remaining augmented estate as is equitable, taking into account all of the circumstances of the marriage of the decedent and such surviving spouse. Children urge that, based on the last portion above stated, we view the equitable powers of the court in the same manner that we do with respect to property division in a divorce case. This we decline to do since the relationships of the parties are so dissimilar. In a divorce action the division is made between the two parties, husband and wife. In a probate action the division is between the surviving spouse and the other heirs who may have a variety of relationships to the surviving spouse; children of the couple, children of decedent only (as in this case), brothers and sisters of the decedent, their children, etc. We see no possibility of laying down any rule that would cover all situations that is any clearer than what the legislature has said: The trial court shall award an equitable share taking into account the circumstances as defined.

As in all other instances of the review of the exercise of a legal discretion by the trial court, our function in this case is to determine whether there has been an abuse of discretion. In other words, we are not to determine whether the [justices] of this court would have made an original like ruling, but rather whether we think a judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion.

*Davis v. Kressly*, 78 S.D. 637, 641-42, 107 N.W.2d 5, 8 (1961).

We then examine the decision in this case with respect to the trial court's allowance of the full $100,000 elective share. Absent her choice to take her elective share, Ann as the surviving spouse is entitled to one-third of the *probate* estate under the laws of intestate succession. She may, however, opt to take her elective share of the *augmented* estate. In arriving at the augmented estate, certain of Ann's assets and joint tenancy property that would be free of probate (except, perhaps, for tax purposes) are included in the augmented estate and used for the purpose of computing her elective share. We recognize that the marriage lasted for ten years, during which time Ann contributed substantially to the support of the couple and the maintenance of the property. In addition, Ann provided a pickup and a boat for Louis. There is a paucity of evidence in the record of any close personal relationship between the children and decedent, particularly during the last ten years of his life. It does not appear to us that Ann was taking advantage of the situation, rather, it appears that she provided the substantial support for herself and her husband who was sporadically employed and apparently had a drinking problem. Weighing these facts in the light of the legislative mandate, we do not agree with Children's initial contention that the trial court abused its discretion by valuing Ann's elective share at $100,000.

Children's second issue appears meritorious and we believe that the trial court erred in the calculations necessary to arrive at the net proceeds of the augmented estate to be distributed to Ann. Specifically, the trial court should have valued

Ann's homestead interest and deducted such value from her elective share in the remaining augmented estate.

The augmented estate, as defined in SDCL 30–5A–2, consists of the estate reduced by funeral and administration expenses and enforceable claims (the equivalent of the usual probate estate) to which is added the value of various transfers, the value of the property of surviving spouse at the time of decedent's death, plus certain transfers by the surviving spouse, all as defined under the statute. To determine the surviving spouse's share in the augmented estate, SDCL 30–5A–8 directs that "property which is part of the augmented estate which passes or has passed to the surviving spouse by testate or intestate succession, homestead or other allowance or other means, ... shall be applied first to satisfy, and, if sufficient, to eliminate the elective share." It is apparent that when the legislature speaks of "homestead" it has reference to the rights of the surviving spouse as defined and delimited in SDCL ch. 43–31.

To properly apply the elective share statutes, the trial court must first determine the value of the properties defined in SDCL 30–5A–8 passing or passed to Ann and the value of Ann's homestead right. Once those values are determined, the trial court must next determine whether the value of that property is less than one-third of the value of the augmented estate, or $100,000, whichever is greater. If the value is lesser, then the court "shall award to the surviving spouse such elective share in the remaining augmented estate as is equitable." There is no indication in the

record that the trial court placed a value on Ann's homestead right. In addition, the trial court erred by not subtracting the value of Ann's homestead right from her elective share. Since the trial court erred in its calculation of the amount of the augmented estate to be distributed to Ann, we reverse and remand for a redetermination of the amount to be distributed to Ann.

■ At this point we are compelled to discuss the affect of a disclaimer of homestead rights by the surviving spouse. Under SDCL 30–5A–7 and 30–5A–8, the value of the surviving spouse's homestead right is charged to the elective share of the surviving spouse regardless of any disclaimer of those rights. Generally speaking, any property that falls outside of a narrow exception contained in SDCL 30–5A–7 that is disclaimed by the surviving spouse shall nonetheless "be charged to the elective share of the surviving spouse under the provisions of § 30–5A–8." SDCL 30–5A–7. The narrow exception contained in SDCL 30–5A–7 applies only to "[a]ny property or interest disclaimed by a surviving spouse which would not have qualified for marital deduction under the provisions of the United States internal revenue code pertaining to estate taxes in the case of the estate of a decedent which would otherwise be subject to an estate tax under the United States internal revenue code." We must now determine whether a homestead right of a surviving spouse would qualify for marital deduction. 26 U.S.C.A. § 2056(b)(1)* deals specifically with this issue. It appears that Ann's homestead right would qualify for marital deduction since it does not meet the

---

\* 26 U.S.C.A. § 2056(b)(1) reads in pertinent part:

Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

    (A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

    (B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;

and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under subparagraph (A) and (B))—

    (C) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executive or by the trustee of a trust.

limitations set out in 26 U.S.C.A. § 2056(b)(1). Since the homestead right does not fall within the narrow exception created by SDCL 30–5A–7, the value of the homestead right must be charged to the elective share under SDCL 30–5A–8 regardless of any disclaimer of such homestead right by the surviving spouse.

Children also claim that the court should exclude family heirlooms from distribution to Ann as part of her elective share. Children devote only three sentences of their brief to this issue and do not cite any authority supporting their position. We have held time and time again that failure to cite any authority results in waiver of the issue. SDCL 15–26A–60; *First Nat. Bank of Minneapolis v. Kehn Ranch*, 394 N.W.2d 709 (S.D.1986); *State v. Grooms*, 359 N.W.2d 901 (S.D.1984); *Corbly v. Matheson*, 335 N.W.2d 347 (S.D.1983); *State v. Shull*, 331 N.W.2d 284 (S.D.1983); *Graham v. State*, 328 N.W.2d 254 (S.D. 1982).

Finally, Children claim that SDCL 30–5A–5 and SDCL 29–1–5 are conflicting and that SDCL 29–1–5 should prevail. When determining legislative intent, we must assume that the legislature in enacting a provision had in mind previously enacted statutes relating to the same subject matter. *State v. Chaney*, 261 N.W.2d 674 (S.D.1978). We believe that the legislature, by enacting SDCL ch. 30–5A, seems to reflect more modern thinking, exemplified by the provisions of the UPC, to afford a larger share of the intestate estate to a surviving spouse, and to provide protection against disinheritance of the surviving heirs. *See* 23 Am.Jur.2d Descent & Distribution § 120 (1983). We hold, therefore, that SDCL 29–1–5 and SDCL 30–5A–5 are not mutually repugnant and can both be given credence under a fair reading of both statutes. Furthermore, even if there was a conflict, we note that the more recent enactment is controlling. *Kneip v. Herseth*, 87 S.D. 642, 214 N.W.2d 93 (1974). SDCL 30–5A–5 was enacted long after SDCL 29–1–5.

We affirm in part, reverse in part, and remand.

WUEST, C.J., and HENDERSON and MILLER, JJ., concur.

SABERS, J., dissents.

SABERS, Justice (dissenting).

I dissent.

I would affirm the trial court in all respects at this time. The majority opinion is premature in reversing the trial court for failing to evaluate the homestead interest. In my opinion, it simply is not necessary in this case at this time.

For example, if the surviving spouse selects $64,415 of property, and her selection includes her homestead interest, then, there is no reason to evaluate her homestead interest and the entire matter is closed. If, on the other hand, the surviving spouse selects her $64,415 of property and her selection does not include her homestead interest, then, an evaluation would be required so that the value of the homestead interest could be deducted from her selected property.

Although the procedure recommended in the majority opinion may generally be the better procedure, and may be necessary in this case at some future point in time, it is not necessary now and it may never be necessary in this case.