In the Matter of the ESTATE OF Frank PEJSA, a/k/a Frank C. Pejsa, Deceased.

No. 16697.

Supreme Court of South Dakota.

Submitted on Briefs Nov. 27, 1989.

Decided July 18, 1990.

J.M. Grossenburg, Day & Grossenburg, Winner, for appellant, the Estate of Frank Pejsa, a/k/a Frank C. Pejsa, Deceased.

Gary E. Davis, Johnson, Eklund & Davis, Gregory, for appellee, Gladys Pejsa.

HENDERSON, Justice.

### PROCEDURAL HISTORY/ISSUES

Frank Pejsa's (Frank) will dated September 10, 1985, was admitted to probate on November 11, 1988. The surviving spouse, Gladys Pejsa (Gladys), filed her election to take an elective share of her husband's augmented estate, having received no legacy under the will except her right of homestead as guaranteed by South Dakota law. After a probate hearing in circuit court, Gladys was awarded fifty percent of Frank's augmented estate.

On appeal, the estate alleges:

(1) That the trial court abused its discretion in awarding an elective share without taking into account all circumstances relative to the second marriage arrangement, surviving spouse's net worth, and income, and;

(2) That the trial court erred by not subtracting the value of spouse's homestead from her elective share.

We affirm on Issue I, and reverse on Issue II.

### FACTS

Gladys, the surviving spouse, was married to Frank for 12 years at the time of his death on December 15, 1987. This had been the second marriage for both parties. Frank and Gladys both had three children from earlier marriages. The children are

all adults and living away from home. At the time of their marriage, Frank was just short of reaching his 72nd birthday and Gladys was 52 years of age. Gladys had first met Frank when she rented a basement apartment from him in his home, where she and her youngest son resided when she first came to Gregory, South Dakota as a teacher in 1969.

At the time of their marriage in 1975, Frank was retired from his occupation as a carpenter but did some part-time work. He was receiving Social Security retirement and Gladys was employed full time as a teacher in the Wagner, South Dakota school system. After the completion of her 1975–1976 contract with the Wagner school system, Gladys was rehired by the Gregory school system and taught there as an elementary teacher full time throughout the parties' marriage until Frank's death. It was her intention to retire after the 1988–1989 school year.

During the time of the parties' relationship, Frank had continuing medical problems which required five operations and hospitalization on 55 different occasions. He was never admitted to a nursing home and was cared for by Gladys. Gladys also suffers from some health problems and physical disabilities.

Prior to, and after their marriage, the parties did not discuss or reach any agreement concerning their financial affairs, with each maintaining separate bank accounts that they had established prior to their marriage. Frank's accounts grew considerably over the years during the marriage. They also did not have any formal type of arrangement concerning the payment of household and living expenses. But it is clear that Gladys paid certain living expenses, such as heat, lights, gasoline, grocery bills, telephone, and other household expenses.

In September 1985, Frank, in the company of his daughter Doris Berens the executrix, and her husband Vince Berens, met with Frank's attorney, Dudley Herman. A will was prepared, which was the will admitted to probate in the present case. The will left nothing to Gladys other than her statutory right to a homestead interest in the home which was titled in Frank's name.

Frank held most of his assets in his name and the names of his three children as joint tenants. He also made a gift of his eighty acres to his children before his death. These assets and their values are listed below:

| | | |
|---|---|---:|
| (a) | Lots 1 & 2 of Block 15, Gregory (fee simple) | $ 22,500.00 |
| (b) | Life insurance policy | 10,000.00 |
| (c) | Personal property in home | 2,945.00 |
| (d) | 80 acres of farm ground (gifted to children) | 14,000.00 |
| (e) | Vehicles | 1,085.00 |
| (f) | Certificates of Deposit (held jointly with his children) | 70,489.19 |
| (g) | Joint checking account with daughter, Doris Berens | 22,082.28 |
| (h) | Life insurance policy payable to children | 1,000.00 |

TOTAL $135,101.47

Frank's will dated September 10, 1985, provided that Gladys should receive a life estate in the house; the balance of his estate he left to his three children to share equally.

Gladys filed her election to take an elective share in Frank's estate, instead of taking under the will. The trial court, by way of judgment dated December 8, 1988, awarded Gladys fifty percent (50%) of the net augmented estate. The net augmented estate was computed as follows:

| | |
|---|---:|
| Gross Augmented Estate | $135,101.47 |
| Less: Life estate in house | 12,012.19 |
| Less: Joint checking account | 22,082.28 |
| Less: Funeral/administration expenses | 4,364.84 |
| Net Augmented estate | 96,642.16 |
| × | 50% |
| Elective share awarded | 48,321.08 |
| Plus: Life estate in house | 12,012.19 |
| Total to Gladys | $60,333.27 |

## DECISION

**I.** *The trial court did not abuse its discretion in awarding an elective share to the surviving spouse.*

South Dakota, in 1980, codified into Chapter 30-5A of the South Dakota Code entitled "Elective Share of Surviving Spouse." Under our elective share statutes, if a married person domiciled in this state dies, the circuit court shall have jurisdiction to award an elective share of the augmented estate to the surviving spouse. This usually happens when the surviving spouse is not adequately provided for by the decedent's will.

SDCL 30-5A-5 mandates the elective share awarded to the surviving spouse must be an "equitable" share of the augmented estate:

... the court upon application of the surviving spouse shall award to the surviving spouse such elective share in the remaining augmented estate as is *equitable* taking into account all of the circumstances of all interested parties and the length and other circumstances of the marriage of the decedent and such surviving spouse.... (emphasis added).

The only restriction on the amount of the award placed on the trial court is that it shall not exceed one-third of the augmented estate or $100,000, whichever is greater.

■ The equitable determination in an elective share proceeding is within the discretion of the trial court and will not be overturned, absent an abuse of that discretion. *Matter of Estate of Clyde*, 423 N.W.2d 513 (S.D.1988); *In Re Estate of Smith*, 401 N.W.2d 736, 738 (S.D.1987). In *Smith*, we stated:

As in other instances of review of the exercise of a legal discretion by the trial court, our function in this case is to determine whether there has been an abuse of discretion. In other words, we are not to determine whether or not the [justices] of this court would have made an original like ruling, but rather whether we think a judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion. Citing *Davis v. Kressly*, 78 S.D. 637, 641-42, 107 N.W.2d 5, 8 (1961).

Therefore, the trial court's determination of certain facts and what is "equitable" shall not be disturbed unless there is *clearly no basis* in reason or evidence which would support that finding.

■ In the present case, the trial court determined that Frank and Gladys had a relationship which existed for a period of 17 years (12 years marriage, 5 years living together) terminating upon Frank's death. It was also determined that the increases in some of Frank's investments were the result of his having available to him the bulk of his own income while Gladys' income paid for a substantial portion of the day-to-day living expenses of the couple. She was employed at the time of trial as a teacher, receiving an annual salary of approximately $16,000.00, although it was her intention to retire after the 1988-1989 school year. Her estate and principal source of assets are derived from an inheritance that she received within the past few years from her mother, as well as investments in retirement fund accounts. Her personal estate was not derived from the assets or income of Frank. Evidence was also displayed, without contradiction, that Gladys suffers from some health problems and physical disabilities. Furthermore, no evidence was presented by Frank's children that they had made contributions to his accounts, and the children did not show that they were suffering from any financial or economic hardship.

Based upon these findings, the trial court determined that because of circumstances of Gladys, Frank's surviving children, Gladys' contribution to the increase in Frank's estate, and the length of their marriage, Gladys would receive 50% of the net augmented estate.

After reviewing these trial court findings, we are unable to conclude that they are clearly erroneous. Furthermore, we are satisfied that these findings support the equitable distribution of 50% of the net augmented estate to Gladys and that the trial court did not abuse its discretion in

entering its decision. Since the trial court's decision is not clearly against reason and evidence, we hold that the trial court did not err by awarding Gladys 50% of Frank's net augmented estate.

## II. *The trial court erred by not subtracting the value of the spouse's homestead from her elective share.*

■ The augmented estate, as defined in SDCL 30–5A–2, consists of the estate, reduced by funeral and administration expenses and enforceable claims. To this is added the value of various transfers, and the value of property owned by the surviving spouse at the time of decedent's death which would have been includable in the surviving spouse's augmented estate, if the surviving spouse had predeceased the decedent. Then, transfers by the surviving spouse, all defined under the statute, are added.

■ Therefore, the value of the life estate should not have been deducted from the "gross" augmented estate. SDCL 30–5A–2 specifically designates that which should be deducted from the "gross" augmented estate to reach the "net" augmented estate, funeral and administration expenses and enforceable claims. Although the other state statutes and the Uniform Probate Code (U.P.C.) provide for the deduction of the homestead from the "gross" augmented estate, SDCL 30–5A–2 is silent on this matter. According to *In re Estate of Smith*, 401 N.W.2d 736 (1987):

> There are large distinctions between the South Dakota elective share provisions and those of the U.P.C. (Uniform Probate Code). The U.P.C. provides for an automatic one-third of the augmented estate and does not deduct homestead or other allowance exemptions from the elective share. SDCL ch. 30–5A, on the other hand, provides for a *maximum* of one-third or $100,000, whichever is greater. The trial court may, however, equitably adjust the award at less than the maximum in accord with certain listed conditions. Additionally, the homestead and other allowable exemptions are chargeable against the elective share.

The intent of a statute must be derived from the statute as a whole, from its language and by giving the language its plain, ordinary and popular meaning. This Court will not enlarge a statute beyond its face where the statutory terms are clear and unambiguous in meaning. *Simpson v. Tobin*, 367 N.W.2d 757, 763 (S.D.1985). The trial court erred in its treatment of the life estate interest in the homestead.

Since the life estate is part of the "gross" augmented estate, the surviving spouse's elective share must be reduced, by subtracting the value of the life estate from her elective share:

> Property which is part of the augmented estate which passes or has passed to the surviving spouse by testate or intestate succession, *homestead* or other allowance or other means, ... shall be applied first to satisfy, and, if sufficient, to eliminate the elective share. (Emphasis added). SDCL 30–5A–8; *In re Estate of Smith, supra.*

The life estate should have been included in the augmented estate and deducted from, not added to, the elective share. Therefore, under the present circumstances, the correct method of computation would be as follows:

| | |
|---|---:|
| Gross augmented estate | $ 135,101.47 |
| Less: Joint checking account | −22,082.28 |
| Less: Funeral expense and estimated administration expenses | − 4,364.84 |
| NET AUGMENTED ESTATE | $ 108,654.35 |
| ✕ | 50% |
| Elective share awarded to Gladys | $ 54,327.17 |
| Less: Life estate in house (Chargeable against elective share) | 12,012.19 |
| | $ 42,314.98 |

Since we have altered the calculations through which the trial court was operating, we remand for a trial court determination as to whether a fifty percent elective share remains equitable and within the trial court's intention. Although the trial court did not err in determining that fifty percent of the net augmented estate was an equitable distribution under the circumstances, it should not be limited to such a decision, given the new method of calculation.

Accordingly, we affirm in part, and reverse and remand in part.

All the Justices concur.