1999 SD 156

**Edwin G. ARTZ, Plaintiff and Appellant,**

v.

**Cindy MEYERS, Defendant and Appellee.**

No. 20808.

Supreme Court of South Dakota.

Considered on Briefs Sept. 13, 1999.

Decided Dec. 22, 1999.

Michael Abourezk and Stephanie Bengford, Abourezk Law Office, Rapid City, South Dakota, Attorneys for plaintiff and appellant.

Curt Ireland, Rapid City, South Dakota, Attorney for defendant and appellee.

AMUNDSON, Justice.

[¶ 1.] Edwin Artz appeals the trial court's submission of the "Legal Excuse" instruction to the jury and denial of Artz's motion for a new trial. We affirm.

## FACTS

[¶ 2.] On January 9, 1996, Edwin Artz (Artz) reported for work to the Rapid City bus barn.[1] Artz noticed icy spots on Nemo Road as he proceeded west on his bus route. Approximately nine miles west of Rapid City on Nemo Road, Artz met an eastbound Jeep Grand Cherokee driven by Cindy Meyers (Meyers). Meyers had traveled only one mile from her home when she met Artz's school bus coming around a curve on Nemo Road near the intersection of Nemo Road and Schroeder Road.

[¶ 3.] Artz testified that Meyers' Jeep was "hogging the center of the road" as she came around the corner and suddenly, Meyers' Jeep hit a patch of ice and began to jackknife and weave back and forth in the road. Artz steered his bus onto the shoulder of the road attempting to avoid the collision. Despite Artz's attempts, Meyers' Jeep collided with the front of the school bus.

[¶ 4.] Following the accident, Trooper Don Allen arrived on the scene to investigate the accident. Meyers informed him that she had been driving thirty-five miles per hour. The advisory speed limit sign posted before the curve identified thirty miles per hour as the advisory speed for the curve. Trooper Allen testified that an advisory speed limit is a suggested safe speed limit during normal weather conditions. Trooper Allen testified that Meyers was exceeding the safe speed, but not the speed limit.[2] Allen also testified that the ice on the curve indicated the path of Meyers' vehicle. The marks on the road indicated that Meyers' vehicle was on the right-hand side of the road when she started to lose control of her vehicle. Finally, Allen testified that the ice was visible on the roadway and that it did not make it impossible to drive around the curve.

[¶ 5.] Artz brought suit against Meyers alleging negligence. At the conclusion of the trial, jury instructions were settled. Artz objected to Meyers' proposed jury instruction on "legal excuse." The trial court submitted this proposed instruction to the jury. The jury returned a verdict

---

1.  Artz's bus route required him to travel west on Nemo Road away from Rapid City.

2.  The jury was instructed on speed in jury instruction twenty-three. The instruction provided:

    A statute in the state of South Dakota provides:

    Any person driving a motor vehicle on a highway located in this state must not drive said vehicle at a speed greater than is reasonable and prudent under the conditions then existing.

    This statute sets the standard of care of the ordinarily careful and prudent person. If you find defendant violated it, such violation is negligence.

for Meyers. Artz's motion for new trial based upon the trial court's err in submitting the legal excuse instruction to the jury was denied.

[¶ 6.] Artz appeals, raising the following issues:

1. Whether the trial court erred in submitting the "legal excuse" instruction to the jury.
2. Whether the trial court abused its discretion in denying plaintiff's motion for a new trial.

## DECISION

[¶ 7.] **1. Whether the trial court erred in submitting the "legal excuse" instruction to the jury.**

[¶ 8.] The standard of review for a trial court's instruction to the jury is well settled. The standard states:

An appellant has the burden to show not only that the instruction given was in error, but also that it was prejudicial error to the effect that under the evidence, the jury might and probably would have returned a different verdict if the [defendant's instruction on legal excuse] had [not] been given.

*Knudson v. Hess,* 1996 SD 137, ¶ 6, 556 N.W.2d 73, 75 (citing *Sybesma v. Sybesma,* 534 N.W.2d 355, 359 (S.D.1995) (quoting *Chambers v. Dakotah Charter, Inc.,* 488 N.W.2d 63, 64 (S.D.1992))). A "party seeking to set aside the verdict because of erroneous instructions must establish that such instructions were prejudicial." *Cody v. Edward D. Jones & Co.,* 502 N.W.2d 558, 563 (S.D.1993) (citing *Runge v. Prairie States Ins. of Sioux Falls,* 393 N.W.2d 538, 541 (S.D.1986)). Whether submitting the instruction to the jury is prejudicial is considered "from the standpoint of what the trial judge knew from the evidence at the time he gave this instruction." *Del Vecchio v. Lund,* 293 N.W.2d 474, 476 (S.D.1980). A trial court "is not required to instruct on issues lacking support in the record." *Kuper v. Lincoln–Union Elec. Co.,* 1996 SD 145, ¶ 32, 557 N.W.2d 748,

758. If an issue before the court is " 'supported by competent evidence in the record, the trial court should instruct the jury.' " *Id.* (quoting *Bauman v. Auch,* 539 N.W.2d 320, 323 (S.D.1995)).

[¶ 9.] The court gave instruction number 30, which reads as follows:

Violation of the statutes referenced in instructions 23 and 24 are negligence unless they are legally excused. The Defendant carries the burden of proving by greater convincing force of the evidence that her non compliance was excusable because of an emergency not of her own making.

Under this standard, the defendant must prove:

(1) that an emergency existed,
(2) that she was not engaged in prior conduct which caused or contributed to the emergency, and
(3) that she was unable to comply with the statute because of the emergency.

[¶ 10.] We have previously noted that "where a driver encounters a sudden patch of ice on a roadway, loses control and crosses the centerline, his breach of the statute may be legally excused. It becomes a question for the jury whether the icy condition was foreseeable." *Dartt v. Berghorst,* 484 N.W.2d 891, 896 (S.D.1992) (citing *Bannon,* 333 N.W.2d at 470). In cases involving an "unavoidable accident instruction," this Court has held that such an instruction is not appropriate when the occurrence is reasonably foreseeable. *Id.* (citing *Howard v. Sanborn,* 483 N.W.2d 796, 798 (S.D.1992); *Stevens v. Wood Sawmill, Inc.,* 426 N.W.2d 13, 17 (S.D.1988); *Plucker v. Kappler,* 311 N.W.2d 924, 925 (S.D.1981); *Cordell v. Scott,* 79 S.D. 316, 323, 111 N.W.2d 594, 598 (1961)).

[¶ 11.] It is well settled that the issue of whether a party acted with reasonable care based upon the weather conditions is a question of fact to be determined by the jury. *See Olson v. Judd,* 534

N.W.2d 850, 852 (S.D.1995) (noting that "the jury [is] to resolve the conflict in testimony regarding weather and road conditions."); *Dartt,* 484 N.W.2d at 898 (Sabers, J., dissenting) (opining that "the burden of proving legal excuse is now properly upon Berghorst [the defendant], whether he meets this burden is for the jury"); *Cordell,* 79 S.D. at 323, 111 N.W.2d 594, 598 (noting that "[i]t was for the jury to determine whether or not under all the facts and circumstances defendant should reasonably have anticipated … ice … and whether he was exercising due care under the circumstances.").

[¶ 12.] Artz argues the trial court should not have submitted this instruction to the jury because there was no emergency. Artz argues that based upon the testimony of himself and Mr. Niemeier, the witness of the accident, that Nemo Road contained icy spots the morning of the accident and Meyers own testimony about "you're always cautious of ice" unless the weather is beautiful shows that she was knowledgeable about the icy conditions on Nemo Road and that her own conduct contributed to the accident.

[¶ 13.] In support of his contentions, Artz cites *Dartt,* 484 N.W.2d 891. In *Dartt,* a truck driver attempted to pass a snowplow, drove into the snow cloud created by the snowplow, and hit the plaintiff's vehicle from behind. *Id.* at 892. The trial court gave a "legal excuse" instruction to the jury. *Id.* at 893. After a jury verdict was rendered in defendant's favor, Dartt's motion for judgment notwithstanding the verdict was denied. *Id.* In reversing the trial court's erroneous denial of Dartt's motion for J.N.O.V., this Court found that "there was not sufficient evidence to support a jury finding that Berghorst was faced with a sudden emergency, the matter should not have been submitted to the jury." *Id.* at 898. In the case, evidence was presented that Berghorst saw the snow cloud created by the snowplow, he failed to wait and see if visibility improved, he stated that he was not surprised that

his visibility was obstructed when he entered the cloud; as such, "it was certainly foreseeable that once Berghorst entered the snow cloud, he would be blinded." *Id.* at 897. Finally, this Court noted the settled rule that "a party can claim no better version of the facts than he has given in his own testimony." *Id.*

[¶ 14.] We noted in *Dartt,* that where "road conditions are generally icy, the driver is deemed to be aware of the poor road conditions. If he fails to drive accordingly and then loses control on ice, breaching the statute, he cannot set up the icy condition as an emergency." *Id.* at 896 (citing *Bannon v. Pfiffner,* 333 N.W.2d 464, 469–70 (Iowa 1983)). Artz's counsel would have us rule that, based upon prior history of the icy inclinations of Nemo Road on any day during the winter, icy roads are foreseeable. Such an expansion of the foreseeability test in *Dartt,* which is requested by Artz, is beyond what this Court intended. We find *Dartt* is distinguishable from the present case because *Dartt* lacked sufficient evidence to present the issue of foreseeability to the jury. In the present case, sufficient evidence exists as to whether it was foreseeable that Meyers would encounter ice on Nemo Road.

[¶ 15.] The trial court is "not required to instruct on issues lacking support in the record." *Kuper,* 1996 SD 145, ¶ 32, 557 N.W.2d at 758. In the case at hand, Artz has the burden of showing that the trial judge's giving of the "legal excuse" jury instruction was prejudicial. *Knudson,* 1996 SD 137, ¶ 6, 556 N.W.2d at 75. Additionally, Artz must show that the "jury might and probably would have reached a different verdict, one in [his] favor, had the instruction at issue not been given." *Id.,* ¶ 15, 556 N.W.2d at 77 (citing *LDL Cattle Co., Inc. v. Guetter,* 1996 SD 22, ¶ 35, 544 N.W.2d 523, 530; *Chambers,* 488 N.W.2d at 64).

[¶ 16.] Artz argues that Meyers created her own emergency by driving too fast on foreseeable icy conditions and that she should be precluded from taking advan-

tage of a legal excuse instruction. In reviewing the record, Meyers testified she had not seen any ice until she reached the curve, she "couldn't do anything with my vehicle. It didn't respond," and there was nothing she could do to control her vehicle.

[¶ 17.] Based upon the above testimony, there is an obvious credibility conflict in the evidence submitted by the parties to the jury. We have always held that credibility is for the jury to decide. In addition, " '[t]his court has repeatedly said that issues of negligence, contributory negligence, and the comparative extent thereof, and proximate cause are ordinarily questions of fact[.]' " *Hossle v. Fountain,* 1999 SD 104, ¶ 8, 598 N.W.2d 877, 879 (quoting *Theunissen v. Brisky,* 438 N.W.2d 221, 223 (S.D.1989)). To "limit[ ] the jury's decision to a certain set of facts encroaches and violates the role of the jury as the finder of fact." *Id.* Here, in reviewing the evidence, it supports the submission of the legal excuse instruction to the jury. Therefore, we affirm the trial court on this issue.[3]

[¶ 18.] **2. Whether the trial court abused its discretion in denying plaintiff's motion for a new trial.**

[¶ 19.] At the conclusion of the trial, Artz's counsel made a motion for new trial

pursuant to SDCL 15-6-59(a)(7), which states in part:

> A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes:
>
> . . . .
>
> (7) Error of law occurring at the trial; provided, that in the case of claim of error, admission, rejection of evidence, or instructions to the jury or failure of the court to make a finding or conclusion upon a material issue which had not been proposed or requested, it must be based upon an objection, offer of proof or a motion to strike.

A motion for new trial made pursuant to SDCL 15-6-59(a) is reviewed under the abuse of discretion standard. *Hossle v. Fountain,* 1999 SD 104, ¶ 5, 598 N.W.2d 877, 878 (citing *In Re Widdison,* 539 N.W.2d 671, 677 (S.D.1995)). " 'Whether a new trial should be granted is left to the sound judicial discretion of the trial court, and this court will not disturb the trial court's decision absent a clear showing of abuse of discretion.' " *Dartt,* 484 N.W.2d

---

3. The dissent argues that this is a negligence case. No one can dispute that fact. The court instructed the jury on the duty to maintain proper control of a motor vehicle under similar circumstances, driving at a reasonable and prudent speed under existing conditions, and driving on the right side of the road. Further, these instructions stated to the jury that a violation of any of these rules of the road constitutes negligence. During closing argument to the jury, Artz's attorney argued the following:

> But it doesn't matter whether you know there is ice or not, that's not really the point. The point is when you go around those sharp curves that you be prepared. That's all. And the point is that if you do get on ice that you don't act inappropriately and just slam on your brakes and start cutting cookies down the road.

In rebuttal, Artz's counsel once again stated:
> What difference does it make if there is ice? If there is ice, that's what we drive

on and everyone else drives on it that day. Everyone else drove around the corner. I'm not saying it's a crime. I'm just saying it's a mistake.

The jury voted 12–0 that there was no mistake. This Court should not second guess the jury in finding a mistake based upon this record. *See, e.g., Kuper,* 1996 SD 145, ¶ 36, 557 N.W.2d at 759 (noting that " '[t]his court does not weigh the evidence and substitute its judgment for that of the jury' "). The jury was given a general verdict form and we are unable to find if the jury found no negligence or whether they found Artz failed to prove damages were caused by this accident. The record reflects that there was a major dispute as to damages sustained. We have always held that if there is any reason to support a jury verdict, it should be upheld. *See Builders Supply Co., Inc. v. Carr,* 276 N.W.2d 252, 257 (S.D.1979). That is the case here, this Court should not act as a thirteenth juror to overrule a jury's unanimous verdict.

at 894 (quoting *Kusser v. Feller*, 453 N.W.2d 619, 621 (S.D.1990)). It is well settled that " '[t]he term abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.' " *Hossle*, 1999 SD 104, ¶ 5, 598 N.W.2d at 878 (quoting *Moore v. Moore*, 354 N.W.2d 732, 733 (S.D.1984) (internal quotations omitted) (quoting *Herndon v. Herndon*, 305 N.W.2d 917, 918 (S.D.1981))). This Court has also previously noted that we will " 'determine that an abuse of discretion occurred only if no "judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion." ' " *Dartt*, 484 N.W.2d at 894 (quoting *Jensen v. Weyrens*, 474 N.W.2d 261, 263 (S.D.1991) (quoting *Estate of Pejsa*, 459 N.W.2d 243, 245 (S.D.1990); *Estate of Smith*, 401 N.W.2d 736 (S.D.1987))).

[¶ 20.] It is well settled that the defendant has the burden of proving legal excuse. *Dartt*, 484 N.W.2d at 894 (citing *Stevens*, 426 N.W.2d at 16; *Meyer v. Johnson*, 254 N.W.2d 107, 111 (SD 1977)). In *Dartt*, the trial court gave a legal excuse instruction, but failed to instruct the jury regarding the defendant's burden of proving legal excuse. *Id.* at 895. This Court held in *Dartt* that the trial court did not "give a full and correct statement of the applicable law" and thus affirmed the trial court's granting of a new trial. *Id.*

[¶ 21.] In *Olson v. Judd*, 534 N.W.2d 850, 851 (S.D.1995), a recent opinion of this Court, two vehicles were traveling up Boulder Canyon toward Deadwood, South Dakota. Both vehicles were familiar with the winter driving conditions in the canyon. *Id.* Snow had begun to fall, the roadway was wet, and snow was beginning to accumulate on the roadway. *Id.* Due to the weather conditions, Judd reduced his speed to 20–30 mph. *Id.* As Judd came around a corner, he suddenly hit a slippery spot. *Id.* Judd's van began to slide into the oncoming path of Olson's vehicle and subsequently collided with Olson in Olson's lane of traffic. *Id.* The issue in *Olson* was

whether the trial court erred in denying Olson's motion for directed verdict, motion for J.N.O.V., and motion for new trial. *Id.* at 852. In response to Judd's defense that the collision was unavoidable due to the weather conditions and despite his exercise of reasonable care, we noted that generally it is " 'for the jury to resolve the conflict in testimony regarding weather and road conditions.' " *Id.* (quoting *Weber v. Bernard*, 349 N.W.2d 51, 53–54 (S.D.1984)).

[¶ 22.] In the case of *Bakker v. Irvine*, 519 N.W.2d 41 (S.D.1994), we ruled on the issue of new trial and stated therein:

> "The real and only question to be solved and answered is, *Is there any legal evidence upon which the verdict can properly be based, and the conclusions embraced in and covered by it be fairly reached?* It is the province of the jury to weigh and pass upon the evidence; to reconcile conflicting testimony; to determine the truth or value of evidence; to ascertain and declare, from all the evidence and testimony, the facts of the case; and from the facts, when ascertained by them, and the law as given to them by the court, to arrive at and announce their decision, which is their verdict."

*Id.* at 49 (quoting *Drew v. Lawrence*, 37 S.D. 620, 624, 159 N.W. 274, 275 (1916) (citations omitted)) (emphasis in original). We conclude that, based upon the evidence presented and the instructions given to the jury, there is support for the jury verdict and the trial court did not abuse its discretion in denying the motion for new trial.

[¶ 23.] We Affirm.

[¶ 24.] MILLER. Chief Justice, KONENKAMP and GILBERTSON, Justices, concur.

[¶ 25.] SABERS, Justice, dissents.

SABERS, Justice (dissenting).

[¶ 26.] The concept of foreseeability is crucial to the majority opinion's analysis. However, it fails to include the weather

conditions of the days immediately preceding this accident as well as the day of the accident. The parties stipulated that the weather conditions were as follows:

1. On January 2, 1996, there was two inches of snow cover at the Rapid City Regional Airport and 1/10 of an inch of new snowfall. The maximum temperature was 21 degrees F and minimum temperature was 2 degrees F.

2. On January 3, 1996, four inches of snow fell at Rapid City Regional Airport.

3. On January 4, 1996, there was five inches of snow cover at the airport and 3/10 of an inch of new snowfall. The high temperature on that day was 16 degrees F and the low temperature was –1 degrees F.

4. On January 5, 1996, there was five inches of snow cover at the airport and no precipitation. The high temperature was 5 degrees F and the low temperature was –13 degrees F.

5. On January 6, 1996, there was five inches of snow cover at the airport and no precipitation, with a high temperature of 8 degrees F and a low temperature of –9 degrees F.

6. On January 7, 1996, there was five inches of snow cover at the airport, no additional precipitation, and a high temperature of 34 degrees F with a low temperature of –4 degrees F.

7. On January 8, 1996, there was four inches of snow cover at the airport, no precipitation, with a high temperature of 48 degrees F and a low temperature of 24 degrees F.

8. Temperatures on January 8, 1996:
   a. 1:53 a.m.: 36 degrees F
   b. 4:52 a.m.: 34 degrees F
   c. 7:52 a.m.: 36 degrees F
   d. 10:53 a.m.: 48 degrees F
   e. 1:53 p.m.: 47 degrees F
   f. 7:54 p.m.: 36 degrees F
   g. 10:53 p.m.: 26 degrees F

9. On January 9, 1996, there was 3 inches of snow cover at the airport and no precipitation. Sunrise was at 7:26 a.m. Temperatures on January 9, 1996:
   a. 1:53 a.m.: 30 degrees F
   b. 4:52 a.m.: 28 degrees F
   c. 7:52 a.m.: 30 degrees F
   d. 10:53 a.m.: 42 degrees F

10. Visibility on January 9, 1996: 10 miles

11. Wind velocity on January 9, 1996: 9 miles per hour

12. Cloud cover on January 9, 1996: no clouds.

Based on the above, it is obvious that from January 7 to January 9, two inches of snow melted in the area. However, the low temperatures ranged from –4 degrees to 24 degrees on these days.

[¶ 27.] The snow coordinator for Pennington County testified that this effect of repeated warming and freezing plays a significant role in sanding this area: after snow falls on Nemo Road and it later warms up, that snow melts and the road is wet. When the temperature drops down to 26 degrees, below freezing, the road will inevitably ice up. He further testified that Nemo Road "[h]as a tendency to ice up quite easily" and that people who live out on Nemo Road would be accustomed to the icy conditions. Meyers lived in this area for two and a half years prior to this accident.

[¶ 28.] This accident occurred around 7:15 a.m. on January 9. The temperature was between 28 and 30 degrees at this time. Having lived on Nemo Road for two and a half years, Meyers was familiar with the winter driving conditions in this area and was driving her four-wheel drive vehicle when she left her home for work in Rapid City. One mile from her home, she approached a curve in the road. There is a posted 30 mile an hour advisory speed limit for this curve, which is a suggested speed limit during *normal* weather conditions. Meyers, however, did not slow

down and exceeded the advisory speed limit by five miles. She hit a patch of ice and lost control of her vehicle; i.e. weaving back and forth in the road and actually spinning completely around twice. She crossed the center line and, despite Artz's efforts to avoid the accident, she collided with the front-end of a school bus driven by Artz.

[¶ 29.] This was not a minor impact. It caused an estimated $10,000 in property damage to Meyers' vehicle and $5,000 in property damage to the school bus. Artz also sustained a complete rotator cuff tear on both shoulders which continues to cause him pain and prevents him from moving his arms up from his sides over his head.

[¶ 30.] Based on the circumstances of this case, it was error to provide the jury with a "legal excuse" instruction. The trial court allowed the excuse instruction based on the theory that Meyers was presented with an emergency not of her own making. However, such an instruction is "not appropriate where an occurrence is reasonably foreseeable." *Dartt v. Berghorst*, 484 N.W.2d 891, 896 (S.D.1992) (citations omitted). Thus, the question becomes "whether the icy condition was foreseeable." *Id.* (citing *Bannon v. Pfiffner*, 333 N.W.2d 464, 470 (Iowa 1983)).

[¶ 31.] The majority opinion notes that Meyers, who lived in the area for two and a half years, admitted that one should "always [be] cautious of ice" on Nemo Road. However, it goes on to indicate that "she had not seen any ice until she reached the curve." What the majority fails to analyze is whether it was *foreseeable* that she encounter icy road conditions not whether she *actually* encountered ice immediately prior to the accident. One cannot be entitled to the legal excuse instruction simply because they claim they have not seen any ice on the road prior to the impact.

[¶ 32.] In the days prior to the accident, the Nemo area received snowfall and varying temperatures. At night, the temperatures were low, but were generally higher during the day. This caused the snow to melt during the day and water to accumulate on the road. The water would then freeze during the night. Therefore, it is entirely foreseeable to a reasonable person, especially one who lived in the area, that Nemo Road would have icy spots at 7:15 a.m. when the temperature the day before was 48 degrees and then dipped to 26 degrees overnight. In fact, snow plows were dispatched to Nemo Road on January 8 to sand icy roads.

[¶ 33.] Meyers also admitted she was driving five miles over the advisory speeding limit. The proper speed for this corner was posted at 30 miles per hour when the weather conditions were *normal*. A reasonable person could not expect the weather conditions to be normal on this particular morning. In this regard, we have stated:

> [W]here a driver encounters a sudden patch of ice on a roadway, loses control and crosses the center line, his breach of the statute may be legally excused. It becomes a question for the jury whether the icy condition was foreseeable. Where, however, the road conditions are *generally* icy, the driver is deemed to be aware of the poor road conditions. If he fails to drive accordingly and then loses control on ice, breaching the statute, he cannot set up the icy condition as an emergency.

*Dartt*, 484 N.W.2d at 896 (internal citations omitted). Meyers stated that one should always be cautious of icy road conditions in the Nemo area. Thus, she was aware that the road conditions were *generally* icy. Despite this awareness, Meyers failed to act accordingly. She did not act with ordinary care, she failed to maintain control of her vehicle and she did not drive at a proper speed. In summation, she created her own "emergency."

[¶ 34.] "[A] defendant has the burden of proving legal excuse." *Id.* at 894. Based on the foregoing, Meyers did not meet her burden of proof to show that the giving of

the legal excuse instruction was justified. The instruction cannot be used to excuse ordinary negligence. Under these circumstances, the correct and proper jury instructions according to the law are based on principles of ordinary negligence. As indicated, one cannot be entitled to the legal excuse instruction simply because they claim they have not seen any ice on the road prior to the impact. Meyers had a duty of due care to Artz and the jury should have been instructed accordingly. Therefore, it was reversible error to improperly instruct the jury that her negligent conduct could be legally excused.

[¶ 35.] Consequently, she was not entitled to the legal excuse instruction under circumstances where she created her own emergency.

[¶ 36.] The majority opinion is correct that this is a negligence case. It is not a sudden emergency case. It should have been decided on jury instructions on negligence only, not sudden emergency.

[¶ 37.] The majority opinion additionally states:

> The jury voted 12–0 that there was no mistake. This [c]ourt should not second guess the jury in finding a mistake based upon this record. The jury was given a general verdict form and we are unable to find if the jury found no negligence or whether they found Artz failed to prove damages were caused by this accident.... [T]his [c]ourt should not act as a thirteenth juror to overrule a jury's unanimous verdict.

The majority opinion misses the point. The jury was erroneously instructed on sudden emergency. "It is ... presumed that a jury understands and follows the court's instructions." *Mid–America Marketing Corp. v. Dakota Industries, Inc.,* 289 N.W.2d 797, 799 (S.D.1980) (citing *Giltner v. Stark,* 219 N.W.2d 700, 704 (Iowa 1974)), even erroneous instructions. If the jury had been *properly* instructed only on the negligence issues, the trial strategy and closing argument of Artz would have been different, producing a different verdict. Then, we would know whether or not the jury found that Meyers acted with ordinary care, maintained control of her vehicle or drove at a proper speed.

[¶ 38.] I vote to reverse and remand this case for a fair trial based upon correct and proper jury instructions according to the law.